# SUPREME JUDICIAL COURT,

#### FOR THE

## COUNTY OF BRISTOL, OCTOBER TERM 1870, AT TAUNTON.

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. HORACE GRAY, Jr.,
Hon. JOHN WELLS,
Hon. SETH AMES, } Justices.
Hon. MARCUS MORTON,

## COMMONWEALTH *vs.* JOHN BURKE.

A man who has carnal intercourse with a woman (not his wife) without her consent, and while he knows that she is insensible and incapable of consenting, is guilty of rape.

GRAY, J. The defendant has been indicted and convicted for aiding and assisting Dennis Green in committing a rape upon Joanna Caton. The single exception taken at the trial was to the refusal of the presiding judge to rule that the evidence introduced was not sufficient to warrant a verdict of guilty. The instructions given were not objected to, and are not reported in the bill of exceptions. The only question before us therefore is, whether, under any instructions applicable to the case, the evidence would support a conviction.

That evidence, which it is unnecessary to state in detail, was sufficient to authorize the jury to find that Green, with the aid

and assistance of this defendant, had carnal intercourse with Mrs. Caton, without her previous assent, and while she was, as Green and the defendant both knew, so drunk as to be utterly senseless and incapable of consenting, and with such force as was necessary to effect the purpose.

All the statutes of England and of Massachusetts, and all the text books of authority, which have undertaken to define the crime of rape, have defined it as the having carnal knowledge of a woman by force and against her will. The crime consists in the enforcement of a woman without her consent. The simple question, expressed in the briefest form, is, Was the woman willing or unwilling? The earlier and more weighty authorities show that the words "against her will," in the standard definitions, mean exactly the same thing as "without her consent;" and that the distinction between these phrases, as applied to this crime, which has been suggested in some modern books, is unfounded.

The most ancient statute upon the subject is that of Westm. I. *c.* 13, making rape (which had been a felony at common law) a misdemeanor, and declaring that no man should "ravish a maiden within age, neither by her own consent, nor without her consent, nor a wife or maiden of full age, nor other woman, against her will," on penalty of fine and imprisonment, either at the suit of a party or of the king. The St. of Westm. II. *c.* 34, ten years later, made rape felony again, and provided that if a man should "ravish a woman, married, maiden, or other woman, where she did not consent, neither before nor after," he should be punished with death, at the appeal of the party; "and likewise, where a man ravisheth a woman, married lady, maiden, or other woman, with force, although she consent afterwards," he should have a similar sentence upon prosecution in behalf of the king.

It is manifest upon the face of the Statutes of Westminster, and is recognized in the oldest commentaries and cases, that the words "without her consent" and "against her will" were used synonymously; and that the second of those statutes was intended to change the punishment only, and not the definition of the crime, upon any indictment for rape — leaving the words

" against her will," as used in the first statute, an accurate part of the description. Mirror, *c*. 1, § 12; *c*. 3, § 21; *c*. 5, § 5. 30 & 31 Edw. I. 529–532. 22 Edw. IV. 22. Staunf. P. C. 24 *a*. Coke treats the two phrases as equivalent; for he says: "Rape is felony by the common law declared by parliament, for the unlawful and carnal knowledge and abuse of any woman above the age of ten years against her will, or of a woman child under the age of ten years with her will or against her will;" although in the latter case the words of the St. of Westm. I. (as we have already seen) were "neither by her own consent, nor without her consent." 3 Inst. 60. Coke elsewhere repeatedly defines rape as " the carnal knowledge of a woman by force and against her will." Co. Lit. 123 *b*. 2 Inst. 180. A similar definition is given by Hale, Hawkins, Comyn, Blackstone, East and Starkie, who wrote while the Statutes of Westminster were in force; as well as by the text writers of most reputation since the St. of 9 Geo. IV. *c*. 31, repealed the earlier statutes, and, assuming the definition of the crime to be well established, provided simply that " every person convicted of the crime of rape shall suffer death as a felon." 1 Hale P. C. 628. 1 Hawk. *c*. 41. Com. Dig. Justices, S. 2. 4 Bl. Com. 210. 1 East P. C. 434. Stark. Crim. Pl. (2d ed.) 77, 431. 1 Russell on Crimes, (2d Am. ed.) 556; (7th Am. ed.) 675. 3 Chit. Crim. Law, 810. Archb. Crim. Pl. (10th ed.) 481. 1 Gabbett Crim. Law, 831. There is authority for holding that it is not even necessary that an indictment, which alleges that the defendant " feloniously did ravish and carnally know " a woman, should add the words " against her will." 1 Hale P. C. 632. *Harman* v. *Commonwealth*, 12 S. & R. 69. *Commonwealth* v. *Fogerty*, 8 Gray, 489. However that may be, the office of those words, if inserted, is simply to negative the woman's previous consent. Stark. Crim. Pl. 431 note.

In the leading modern English case of *The Queen* v. *Camplin*, the great majority of the English judges held that a man who gave intoxicating liquor to a girl of thirteen, for the purpose, as the jury found, " of exciting her, not with the intention of rendering her insensible, and then having sexual connection with her," and made her quite drunk, and, while she was in a state of in-

sensibility, took advantage of it, and ravished her, was guilty of rape. It appears indeed by the judgment delivered by Patteson, J. in passing sentence, as reported in 1 Cox Crim. Cas. 220, and 1 C. & K. 746, as well by the contemporaneous notes of Parke, B., printed in a note to 1 Denison, 92, and of Alderson, B., as read by him in *The Queen* v. *Page*, 2 Cox Crim. Cas. 133, that the decision was influenced by its having been proved at the trial that, before the girl became insensible, the man had attempted to procure her consent, and had failed. But it further appears by those notes that Lord Denman, C. J., Parke, B., and Patteson, J., thought that the violation of any woman without her consent, while she was in a state of insensibility and had no power over her will, by a man knowing at the time that she was in that state, was a rape, whether such state was caused by him or not; for example, as Alderson, B., adds, "in the case of a woman insensibly drunk in the streets, not made so by the prisoner." And in the course of the argument this able judge himself said that it might be considered against the general presumable will of a woman that a man should have unlawful connection with her. The later decisions have established the rule in England that unlawful and forcible connection with a woman in a state of unconsciousness at the time, whether that state has been produced by the act of the prisoner or not, is presumed to be without her consent, and is rape. *The Queen* v. *Ryan*, 2 Cox Crim. Cas. 115. *Anon.* by Willes, J., 8 Cox Crim. Cas. 134. *Regina* v. *Fletcher*, Ib. 131; *S. C.* Bell, 63. *Regina* v. *Jones*, 4 Law Times (N. S.) 154. *The Queen* v. *Fletcher*, Law Rep. 1 C. C. 39; *S. C.* 10 Cox Crim. Cas. 248. *The Queen* v. *Barrow*, Law Rep. 1 C. C. 156; *S. C.* 11 Cox Crim. Cas. 191. Although in *Regina* v. *Fletcher*, *ubi supra*, Lord Campbell, C. J., (ignoring the old authorities and the repealing St. of 9 Geo. IV.,) unnecessarily and erroneously assumed that the St. of Westm. II. was still in force; that it defined the crime of rape ; and that there was a difference between the expressions "against her will" and "without her consent," in the definitions of this crime ; none of the other cases in England have been put upon that ground, and their judicial value is not impaired by his inaccuracies.

The earliest statute of Massachusetts upon the subject was passed in 1642, and, like the English Statutes of Westminster, used "without consent" as synonymous with "against her will," as is apparent upon reading its provisions, which were as follows: 1st. "If any man shall unlawfully have carnal copulation with any woman child under ten years old, he shall be put to death, whether it were with or without the girl's consent." 2d. "If any man shall forcibly and without consent ravish any maid or woman that is lawfully married or contracted, he shall be put to death." 3d. "If any man shall ravish any maid or single woman, committing carnal copulation with her by force, against her will, that is above the age of ten years, he shall be either punished with death, or with some other grievous punishment, according to circumstances, at the discretion of the judges." 2 Mass. Col. Rec. 21. Without dwelling upon the language of the first of these provisions, which related to the abuse of female children, it is manifest that in the second and third, both of which related to the crime of rape, strictly so called, and differed only in the degree of punishment, depending upon the question whether the woman was or was not married or engaged to be married, the legislature used the words "without consent," in the second provision, as precisely equivalent to "against her will," in the third. The later revisions of the statute have abolished the difference in punishment, and therefore omitted the second provision, and thus made the definition of rape in all cases the ravishing and carnally knowing a woman "by force and against her will." Mass. Col. Laws, (ed. 1660) 9; (ed. 1672) 15. Mass. Prov. Laws, 1692–3 (4 W. & M.) c. 19, § 11; 1697 (9 W. III.) c. 18; (State ed.) 56, 296. St. 1805, c. 97, § 1. Rev. Sts. c. 125, § 18. Gen. Sts. c. 160, § 26. But they cannot, upon any proper rule of construction of a series of statutes *in pari materiâ*, be taken to have changed the description of the offence. *Commonwealth* v. *Sugland*, 4 Gray, 7. *Commonwealth* v. *Bailey*, 13 Allen, 541, 545.

We are therefore unanimously of opinion that the crime, which the evidence in this case tended to prove, of a man's having carnal intercourse with a woman, without her consent, while she was, as he knew, wholly insensible so as to be incapable of consenting,

and with such force as was necessary to accomplish the purpose, was rape. If it were otherwise, any woman in a state of utter stupefaction, whether caused by drunkenness, sudden disease, the blow of a third person, or drugs which she had been persuaded to take even by the defendant himself, would be unprotected from personal dishonor. The law is not open to such a reproach.

*Exceptions overruled.*

*J. Brown*, for the defendant.

*C. Allen*, Attorney General, for the Commonwealth.