579 A.2d 966

COMMONWEALTH of Pennsylvania, Appellant,

v.

George William RUPPERT.

COMMONWEALTH of Pennsylvania

v.

George William RUPPERT, Appellant.

Superior Court of Pennsylvania.

Argued April 4, 1990.

Submitted April 4, 1990.

Filed Sept. 4, 1990.

Jonelle H. Pepple, Asst. Dist. Atty., York, for Com.

Jeffrey C. Marshall, Asst. Public Defender, York, for George Ruppert.

Before CIRILLO, President Judge, and BECK and HESTER, JJ.

BECK, Judge:

This is an appeal from judgment of sentence imposed following a trial by jury in which appellant, George Ruppert, was found guilty of rape,[1] statutory rape,[2] involuntary deviate sexual intercourse,[3] indecent assault,[4] and corruption of a minor.[5] Upon consideration of appellant's post-verdict motions, the trial judge arrested judgment on the rape conviction. The Commonwealth cross-appeals from that determination.

The primary issue in this case, raised by the Commonwealth, is whether there was sufficient evidence presented at trial of forcible compulsion to sustain Ruppert's conviction of the crime of rape. We will consider the Commonwealth's appeal first.

■ The Commonwealth contends that the trial judge erred in granting Ruppert's motion in arrest of judgment. In reviewing a trial court's granting of a motion in arrest of judgment, we determine whether the evidence offered by the Commonwealth was legally sufficient to support the verdict. We will affirm only if, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, and accepting all reasonable inferences drawn therefrom on which the jury could have based the verdict, the evidence was nonetheless insufficient to find guilt beyond a reasonable doubt. *Commonwealth v. Robinson*, 351 Pa.Super. 309, 311–12, 505 A.2d 997, 998 (1986). Viewed in this light, the facts of this case are as follows.

1.  18 Pa.Cons.Stat.Ann. § 3121 (Purdon Supp.1990).
2.  18 Pa.Cons.Stat.Ann. § 3122 (Purdon 1983).
3.  18 Pa.Cons.Stat.Ann. § 3123 (Purdon 1983).
4.  18 Pa.Cons.Stat.Ann. § 3126 (Purdon 1983).
5.  18 Pa.Cons.Stat.Ann. § 6301 (Purdon 1983).

From November of 1988 to January of 1989, George Ruppert, his wife Diana Ruppert, their three daughters, ages nine, six and five, and Bruce Ruppert, George's brother, lived in a trailer owned by Ruppert's mother. The trailer had two bedrooms, a living room, kitchen and bathroom. The three girls slept in one bedroom. The two younger ones slept in a bed while "TR" the nine-year old victim, slept on a mat on the floor. Diana slept in the other bedroom which was next to the girls' room, while George, and Bruce, who stayed with the family only sporadically, slept in the living room.

TR was ten years old at the time of the trial. She testified that during the three month period in question, Ruppert would come into her bedroom during the night and wake her up. While her two sisters were sleeping, he would take his "thing," "what he goes to the bathroom with," out of his pants, pick her up and put it in her "butt" and in the part she "go[es] to the bathroom with." Notes of Testimony, ("N.T.") 8/15/89, at 131–32. She testified that she told him this hurt her, that she cried while he did it, and that sometimes she would yell out. *Id.* at 132–34, 151–52. She further stated that he would sometimes tell her to sit on a chair, and then he would put his penis in her mouth. He would then ejaculate and make her swallow the "yucky stuff." *Id.* at 133, 140–41. In addition, he would take her into the bathroom and show her sexually explicit magazine pictures. *Id.* at 142–43. Ruppert told her not to tell anybody. *Id.* at 132–33. TR could not specify how frequently these events occurred. She did testify that during the incidents, her mother was sometimes at home sleeping in the next room. During the three month period in question, Ruppert was drinking heavily and often would not remember what he did. *Id.* at 312.

Based on this and other evidence, the jury found Ruppert guilty of rape, and all other charges. Ruppert filed a post-verdict motion in arrest of judgment, alleging insufficient evidence to sustain the guilty verdict as to rape. The trial judge granted the motion, finding insufficient evidence

of the element of forcible compulsion under *Commonwealth v. Titus*, 383 Pa.Super. 54, 556 A.2d 425 (1989). The trial court erred in its application of *Titus* in this case, and we therefore reverse.

■ In order to sustain the jury verdict of guilty of rape, the Commonwealth had to prove that Ruppert engaged in sexual intercourse, with another person not his spouse, by forcible compulsion, or by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution. 18 Pa.Cons.Stat.Ann. § 3121(1) & (2) (Purdon Supp.1990). It is clear that in this case no evidence was submitted of physical force or violence; however, the Pennsylvania Supreme Court held in *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986), that forcible compulsion includes "not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will." 510 Pa. at 555, 510 A.2d at 1226. The determination of whether moral, psychological or intellectual force exists in a given case is to be made in light of the totality of the circumstances, and important factors to be considered include the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and the physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination, or custodial control over the victim, and whether the victim was under duress. *Id.*

The defendant in *Rhodes*, a twenty year old man who was a neighbor of the eight year old victim and who knew her for several years, lured her to an abandoned building and proceeded to engage in sexual acts with her to the extent that she was bleeding and torn. *Id.*, 510 Pa. at 557, 510 A.2d at 1227. In finding sufficient evidence of forcible compulsion, the *Rhodes* court reasoned:

> There is an element of forcible compulsion, or the threat of forcible compulsion that would prevent resistance by a person of reasonable resolution inherent in the

situation in which an adult who is with the child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult, instructs the child to submit to the performance of sexual acts. This is especially so when the child knows and trusts the adult. In such cases, forcible compulsion or the threat of forcible compulsion derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult ("prevent resistance"), without the use of physical force or violence or the explicit threat of physical force or violence.

*Id.,* 510 Pa. at 557, 510 A.2d at 1227.

In *Titus, supra,* on which the trial court relied, Titus was found guilty of rape and related offenses against his thirteen year old daughter. Titus lived in a two bedroom apartment with his parents and the daughter. One night he came home after a night of drinking and got into bed with the girl. After she woke up, he engaged in sexual intercourse with her. She then pushed him away, after which he left her alone. 383 Pa.Super. at 56, 556 A.2d at 426. There was no evidence of physical forcible compulsion in that case, and a panel of this court found insufficient evidence of moral, psychological, or intellectual compulsion. The panel reviewed *Rhodes* and its progeny and found that in all cases following *Rhodes,* and in *Rhodes* itself, there existed factors additional to a parent-child or authority figure relationship which established the existence of moral, psychological, or intellectual force sufficient to sustain a conviction of rape. Proof of a parent-child relationship between the victim and the accused, without more, was not enough to prove this type of force. *Id.,* 383 Pa.Superior Ct. at 62, 556 A.2d at 429. The *Titus* court noted the following additional contributing factors:

... in [*Commonwealth v.*] *Dorman,* [377 Pa.Super. 419, 547 A.2d 757 (1989)], the remote locality and the uncle's use of force to push the victim down; in [*Commonwealth v.*] *Poindexter,* [372 Pa.Super. 566, 539 A.2d 1341 (1988)] the father's reproaches and threats, the beatings of the

two victims, and their fear of breaking up the family; and in *Rhodes* itself, the extreme youth of the victim and the isolated location to which she was taken.

*Id.   See also Commonwealth v. Frank,* 395 Pa.Super. 412, 577 A.2d 609 (1990) (therapist-patient relationship, plus threat that therapist would "ruin [victim's] adoption", provided sufficient evidence of psychological forcible compulsion).   In *Titus,* the court found that the Commonwealth failed to prove any additional factor other than the father-daughter relationship.   The child was thirteen years old and was neither taken to a remote location nor threatened; therefore, the panel concluded that there was insufficient evidence of moral, psychological or intellectual forcible compulsion or the threat thereof to sustain the conviction for rape.   *Id.*[6]

██   In the instant case, the trial judge found that the only factor serving to establish the existence of moral, psychological or intellectual force was the parent-child relationship, and, following *Titus,* that this was insufficient. The judge was particularly persuaded by the fact that the acts took place in the child's bedroom while her sisters slept nearby and with her mother in close proximity, and that there was no evidence of duress.   We have carefully examined the record and find the trial court erred in its assessment of the evidence.   Viewing the totality of the circumstances in the light most favorable to the Commonwealth, it

6.   In arresting judgment, the trial court also relied on *Commonwealth v. Mlinarich,* 518 Pa. 247, 542 A.2d 1335 (1988).   *Mlinarich* is a post-*Rhodes* case in which the Supreme Court was evenly divided, resulting in the affirmance of the Superior Court, which had held, pre-*Rhodes,* that the "legislature intended the term 'forcible compulsion' to mean 'physical compulsion or violence'." *Commonwealth v. Mlinarich,* 345 Pa.Super. 269, 272, 498 A.2d 395, 396 (1985).

At least three panels of this court have considered the effect of *Mlinarich* on *Rhodes,* and all have concluded that *Rhodes* remains the law of the Commonwealth.   *Titus,* 383 Pa.Super. at 60, n. 2, 556 A.2d at 428, n. 2; *Commonwealth v. Dorman,* 377 Pa.Super. 419, 427–29, 547 A.2d 757, 761 (1988), *appeal denied,* 524 Pa. 617, 571 A.2d 380 (1989); *Commonwealth v. Thek,* 376 Pa.Super. 390, 392. n. 1, 546 A.2d 83, 85 n. 1 (1988).

Accordingly, we apply *Rhodes* in the present case.

is clear that the Commonwealth presented sufficient evidence of moral, psychological or intellectual force.

The Commonwealth demonstrated that the thirty-three year old father of a pre-pubescent child repeatedly came into her room at night, woke her up, and engaged in vaginal, oral and anal sexual intercourse with her. During these acts, the child protested by crying and yelling. She even told her father he was hurting her. She testified at trial that he "made" her swallow the "yucky stuff", his semen. The jury could conclude from the evidence of her crying out and her being forced to swallow the semen that TR resisted her father's advances, which he forced upon her, and in addition that he used his position of authority and trust over her and exploited her sense of duty and obedience to him in order to overcome her resistance. *See Dorman*, 377 Pa.Super. at 429, 547 A.2d at 762. In addition, he took her into the bathroom to show her magazine pictures depicting men and women engaged in various sexual acts. The jury could legitimately infer that Ruppert showed her the sexually explicit pictures as psychological persuasion in order to encourage her to imitate what she was seeing. The record reveals evidence of psychological manipulation designed to overcome the will of the child; therefore, the jury's conclusion that Rupert was guilty of rape is supported by record evidence. We conclude that the trial court erred when it found the force used was based solely on that which is inherent in the parent-child relationship. We therefore reverse the trial court's order arresting judgment as to rape.

Next, we consider Ruppert's appeal in which he raises three issues: (1) whether the trial judge erred in permitting a videotape deposition to be admitted into evidence absent strict compliance by the Commonwealth with Pa.R.Crim.P. 9015; (2) whether the trial court erred in failing to grant appellant's motion to employ a psychologist to examine the victim for the purpose of challenging her competency; and (3) whether the lower court erred in concluding that the ten year old victim-witness was competent to testify. As to

these issues, we have thoroughly reviewed the briefs of the parties, the record and the relevant case law, and we conclude that they have been correctly resolved by the trial judge in his opinion. We therefore affirm on that basis.

On appellant Ruppert's appeal, we affirm the trial court.

On the Commonwealth's cross-appeal, we reverse the order of the trial court arresting judgment. We vacate the judgment of sentence and remand the case for entry of sentence consistent with the jury verdict.